## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCIA JEAN HUBER, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-00921 |
| v. | (SAPORITO, M.J.) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## __MEMORANDUM__

In this matter, the plaintiff, Marcia Jean Huber, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On May 13, 2016, Huber protectively filed an application for disability insurance benefits, asserting a disability onset date of July 27, 2015. Her claim was initially denied by state agency reviewers on September 20, 2016. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on October 1, 2018, before an administrative law judge, Daniel Balutis (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Tanja H. Hubacker. The plaintiff was represented by counsel at the hearing.

On November 7, 2018, the ALJ denied Huber's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Huber was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Huber had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Huber had the

severe impairments of: spinal stenosis; degenerative disc disease of the lumbar spine with L4-5 spondylolisthesis; bilateral sacroiliac joint dysfunction; left greater trochanteric bursitis; osteoarthritis of the right hip; degenerative joint disease of the left knee; and obesity. At step three, the ALJ found that Huber did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Huber's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Huber had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

> [S]he is limited to frequently balancing, stooping, kneeling, crouching, climbing ramps or stairs; frequent pushing and pulling of the bilateral upper extremities; never climbing ladders, ropes, or scaffolds; and frequent exposure to unprotected heights, moving mechanical parts, humidity, wetness, cold, extreme heat, or vibration.

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

(Tr. 16.)

In making these factual findings regarding Huber's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how he weighed the various medical opinions in the record. *See generally* 20 C.F.R. § 404.1527; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Huber was capable of performing her past relevant work as a store manager (DOT # 185.167-046), which was "light work" as generally performed.[3] Based on this finding, the ALJ concluded that Huber was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by

---

[3] The ALJ acknowledged that Huber's past relevant work as a store manager was actually performed at a "heavy" exertional level. But the step-four inquiry asks whether a claimant can meet the demands of past relevant work "either as the claimant actually performed it or as generally performed in the national economy." *See* 20 C.F.R. § 404.1560(b)(2).

the Appeals Council, but her request was denied on May 5, 2020, making the ALJ's November 2018 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on June 8, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Huber asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erroneously found that her depression was not a medically determinable impairment; and (2) the

ALJ erred in determining that Huber was capable of performing a limited range of light work when the only relevant medical opinions of record suggested a sedentary exertional limitation at best.

## A. Medically Determinable Mental Impairment

At step two, in addition to the several physical impairments found by the ALJ to be severe, the ALJ considered whether Huber had a medically determinable impairment of depression. The ALJ reviewed the medical evidence of record, as well as Huber's subjective complaints and the medical opinion of a state agency psychological consultant. Ultimately, the ALJ concluded that Huber's reported depression was not a medically determinable impairment, and as a consequence, the ALJ did not consider any impairments as a result of depression in his evaluation of Huber's RFC at step four.

In support of his decision, the ALJ stated:

> [T]he claimant reported depression as a disabling condition; however, the undersigned does not find this as [a] medically determinable impairment. . . . [T]he Act define[s] a "physical or mental impairment" as an impairment that results from anatomical, physiological or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Based on the claimant's complaints and treatment history her functional limitations were due to physical symptoms,

not psychological, and her ongoing treatment notes did not mention any abnormal mental health clinical findings. In addition, on multiple occasions, she denied depression.

Nevertheless, on September 20, 2016, the state agency psychological consultant, John N. Grutkowski, Ph.D., reviewed the record, and found the claimant's activities of daily living mildly restricted, social functioning mildly restricted, concentration, persistence, or pace mildly restricted, and no repeated episodes of decompensation. Therefore, Dr. Grutkowski found the claimant's mental health condition as nonsevere. The undersigned gives this opinion partial weight. The record as a whole does not support Dr. Grutkowski's opinion that depression was a medically determinable impairment, and this finding appeared to be based on the claimant's allegation of depression only. Yet, the finding that it was not severe was based on the consistent normal psychological findings. Thus, the undersigned does not consider depression in the residual functional capacity in step 4 below because it is not a medically determinable impairment.

(Tr. 14 (citations omitted).)

As the ALJ noted, a "medically determinable impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The ALJ determined that the medical evidence of record did not document any formal diagnosis or clinical findings with respect to depression, and we

are unable to find any either in our review of the administrative record. A plaintiff's own statements "of symptoms, a diagnosis, or a medical opinion" may not be used to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1521; *see also Delgado v. Comm'r of Soc. Sec.*, Civ. No. 20-283, 2021 WL 1686704, at *5 (D.N.J. Apr. 29, 2021).

The plaintiff points to the opinion of non-examining state agency medical consultant, Dr. Grutkowski, in support of her contention that she had a medically determinable mental impairment due to depression. An ALJ is required to evaluate every medical opinion in the record, regardless of the source of the opinion. 20 C.F.R. § 404.1527(c). Because state agency medical and psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," the ALJ must consider their findings as opinion evidence. Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *4; *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 n.2 (3d Cir. 2007).

In determining the appropriate weight to which a non-treating source's medical opinion is entitled, the ALJ must consider the following factors: (1) whether the medical source actually examined the claimant;

(2) the degree to which the medical opinion is supported by relevant evidence; (3) the degree to which the medical opinion is consistent with the record as a whole; and (4) the medical source's specialization. 20 C.F.R. § 404.1527(c)(1) & (3)–(5). In addition, the ALJ must consider any other factors that tend to support or contradict the medical opinion, but only if brought to his attention. *See id.* § 404.1527(c)(6). Here, the ALJ clearly articulated his consideration of factors (1), (2), and (3), and there is nothing in the record to indicate the specialization of the state agency medical consultant. (*See* Tr. 14.) Thus, we find the ALJ's discounting of Dr. Grutkowski's opinion, which he assigned only "partial weight," was supported by substantial evidence and was reached based upon a correct application of the relevant law.

Moreover, we find the ALJ correctly determined that Dr. Grutkowski's opinion appeared to be based entirely on the claimant's own allegation of depression—the only medical evidence cited in support was a finding by a consultative examining physician, Ziba Monfared, M.D., that Huber suffered from a "mood disorder." (*See* Tr. 95.) Reference to the consultative examining physician's report reveals that this examining internist's "mood disorder" finding was based entirely on Huber's own

self-reported history of mood disorder. (*See* Tr. 380.)

Thus, in the absence of any objective medical evidence of depression, we find there is substantial evidence to support the ALJ's finding that Huber's reported depression was not a medically determinable impairment. *See Scipio v. Comm'r of Soc. Sec.*, 611 Fed. App'x 99, 101–02 (3d Cir. 2015) (per curiam). Because the ALJ is only required to consider medically determinable impairments, *see* 20 C.F.R. §§ 404.1521, 404.1545(a)(2), the ALJ's failure to consider the plaintiff's alleged mental impairment of depression in determining her RFC was not in error. *See Switzer v. Comm'r of Soc. Sec.*, No. 1:18-cv-16554-NLH, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (finding that, in determining a claimant's RFC, "the ALJ does not need to consider any alleged conditions that are not medically determinable").[4]

---

[4] We further note that, even if Dr. Grutkowski's opinion had been fully credited and the ALJ had found a medically determinable impairment of depression, any error would be harmless, as Dr. Grutkowski further found that Huber's depression was not a severe impairment, and she was only subject to *mild* mental functioning limitations, with no episodes of decompensation. *See Applewhite v. Colvin*, 54 F. Supp. 3d 945, 954 (N.D. Ill. 2014) (finding that non-severe depression, with "mild at best" limitations and no episodes of decompensation, was "no more than a 'slight abnormality,'" with no "significant effect on [the claimant's] ability to work," and "not significant

*(continued on next page)*

### B. Physical RFC Determination

In assessing her RFC, the ALJ found that Huber was able to perform light work, subject to certain postural and environmental limitations. As we have noted in the margin above, light work involves lifting no more that 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b).

The administrative record includes two medical opinions with respect to Huber's functional limitations, both of which were assigned "partial weight" by the ALJ.

Huber's treating physician, John Kline, M.D., recorded three relevant medical opinions. In treatment notes for a September 21, 2015, examination, Dr. Kline opined that Huber was restricted from "returning to her pre-injury job," and that she "more probably than not" would be released "to a sedentary capacity of work." (Tr. 228.) On October 9, 2015, Dr. Kline completed an "injury status report" in which he opined that Huber could return to modified work, subject to the following limitations: Huber could sit for up to eight hours per workday, but she could only

---

enough to warrant the imposition of any additional non-exertional RFC limitations").

stand or walk up to four hours per workday; she could lift no more than 10 pounds at any time; she could never reach overhead, and she could only occasionally bend, reach, climb, squat, rotate, twist, or kneel. (Tr. 466.) In treatment notes for a November 17, 2015, examination, Dr. Kline opined that Huber continued to be precluded from "performing her pre-injury job," but he she could be released "to a sedentary light modified capacity level of work." (Tr. 230.) All three of Dr. Kline's opinions were consistent with a limited range of sedentary work, as defined by the agency's regulations. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). The ALJ considered these opinions by Dr. Kline and assigned them "partial weight." (Tr. 19–20.)

On September 14, 2016, a state agency consultative examining physician, Ziba Monfared, M.D., performed an internal medicine examination. Together with his examination report, Dr. Monfared completed a medical source statement of ability to do work-related physical activities. In his statement, Dr. Monfared opined that Huber was capable of: occasionally lifting or carrying up to 20 pounds, but no

amount of weight frequently; sitting no more than two hours and standing or walking no more than one hour each per workday; ambulating no more than 10 meters without the use of a cane; frequent use of her hands to reach, handle, finger, feel, push, or pull, but only occasional use of her feet to operate foot controls; occasional balancing, stooping, or climbing of stairs or ramps, but no kneeling, crouching, crawling, or climbing of ladders or scaffolds; occasional exposure to unprotected heights, operating a motor vehicle, humidity or wetness, dust, odors, fumes, or other pulmonary irritants; and no exposure to moving mechanical parts, extreme cold, extreme heat, or vibrations. (Tr. 384–89.) The sit/stand/walk limitations would have precluded all full-time work; otherwise, Dr. Monfared's opinions were consistent with a limited range of sedentary work. *See* 20 C.F.R. § 404.1567(a). The ALJ considered these opinions by Dr. Monfared and assigned them "partial weight." (Tr. 19.)

The plaintiff does not challenge the ALJ's consideration of these medical opinions or the weight assigned to them, per se, but rather she challenges the ALJ's subsequent determination that she was capable of performing a limited range of *light* work without any medical evidence to

support that greater level of exertional capacity. Although the ALJ only *partially* rejected the medical opinions of Dr. Kline and Dr. Monfared, neither of the doctors' opinions provided any support for a finding that Huber was capable of performing anything more than *sedentary* work—and Dr. Monfared's opinions included a sit/stand/walk limitation consistent with *total* disability.

The record in this case does not support a finding that Huber could do light work as defined in the regulations—one physician believes she is totally disabled, and the other said she could do sedentary work. *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). "Generally, an ALJ may not reject all of the medical opinions in the record and assess an RFC that is greater than found by the medical professionals." *Dennis v. Colvin*, Civil Action No. 3:13-CV-2537, 2015 WL 1608714, at *8 (M.D. Pa. Apr. 10, 2015); *see also Doak*, 790 F.2d at 29 ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); *House v. Colvin*, Civil No. 3:12-CV-02358, 2014 WL 3866072, at *8 (M.D. Pa. Aug. 6, 2014) ("Rarely can a decision be made regarding a claimant's

residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."). Here, the ALJ's decision to discredit—at least partially—the opinions of both Dr. Kline and Dr. Monfared left the ALJ without a single medical opinion upon which to base his determination that Huber had the residual functional capacity to perform light work. *See House*, 2014 WL 3866072, at *8. Under these circumstances, it is clear that the ALJ relied on his own "lay intuition" in concluding that Huber was able to perform light work over the course of a full 8-hour workday. *See id.*[5]

Accordingly, in light of the foregoing, we are unable to conclude that substantial evidence supports the ALJ's RFC determination.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Huber was not disabled is not supported by substantial

---

[5] We note that a non-physician state agency adjudicator had previously found Huber capable of performing light work in the agency's initial administrative findings denying her application for benefits. (Tr. 97.) But it is well-settled that an ALJ may not rely on a state agency adjudicator's opinion in reaching a residual functional capacity determination, as agency policy directs that such an assessment is not entitled to any evidentiary weight at all. *See House*, 2014 WL 3866072, at *8 n.7.

evidence. Accordingly, the Commissioner's decision denying her application for disability insurance benefits will be vacated and the case will be remanded for further proceedings consistent with this opinion.


Dated: March 29, 2022                    _**s/Joseph F. Saporito, Jr.**_
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge